IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY, | ) | Case No. 11-5387 SC |
| | ) | |
| Plaintiff, | ) | ORDER RE: CROSS-MOTIONS FOR |
| | ) | SUMMARY JUDGMENT |
| v. | ) | |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**United States District Court**
For the Northern District of California

## I.  INTRODUCTION

This action arises out of a dispute between two insurance carriers over coverage and contribution for an automobile accident. Both Plaintiff American Home Assurance Company ("American Home") and Defendant State Farm Mutual Automobile Insurance Company ("State Farm") issued insurance policies covering one of the drivers involved in the accident, but only American Home actually provided coverage.  American Home brings this action against State Farm to enforce its contribution and subrogation rights.  Now before the Court are fully briefed cross-motions for summary judgment filed by both parties.  ECF Nos. 23 ("Pl.'s MSJ"), 27

(Def.'s XMSJ), 30, 31, 33, 34.  These motions are appropriate for determination without oral argument.  Civ. L.R. 7-1(b).  For the reasons set forth below, the Court GRANTS American Home's motion for summary judgment and DENIES State Farm's.

**II.   BACKGROUND**

Unless otherwise specified, the following facts are undisputed.  In July 2007, David Beatson and Young Park were involved in an automobile accident in San Francisco, California.  Mr. Beatson was driving a rented vehicle and was in San Francisco on business on behalf of his employer, Heidenhain Holding, Inc. ("Heidenhain").  Pl.'s Ex. L.  At the time of the accident, Beatson was insured by State Farm under a personal auto policy.  Pl.'s Ex. A.  He was also insured by American Home under a business auto package policy issued to Heidenhain.  State Farm now concedes that both policies afforded primary coverage for the July 2007 accident.[1]  Pl.'s Ex. K at 8; Def.'s XMSJ at 8.

In July 2009, Ms. Park filed a complaint against Mr. Beatson and Heidenhain, among others, in San Francisco Superior Court (hereinafter, the "Park action").  Mr. Beatson and Heidenhain subsequently tendered the Park action to American Home.  American Home accepted the tender and agreed to defend the suit.  American Home then assigned Ray Adams to manage the claim and attorney Barbara Caulfield to handle the legal defense.  Def.'s Exs. C ("Caulfield Dep."), D.  On January 14, 2010, Ms. Park offered to

---

[1] The State Farm policy had bodily injury policy limits of $250,000 per person, $500,000 for each accident, and property damage limits of $100,000 for each accident.  Pl.'s Ex. O.  The American Home policy had limits of $1 million per person and per accident.  Pl.'s Ex. A.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

settle the action for $1 million.  Pl.'s Ex. C.  That offer was
rejected by American Home.

Mr. Beatson notified State Farm of the Park action on or about
August 13, 2010.  Pls.'s Ex. J.  State Farm then assigned Jerry Ho
to investigate and handle the claim.  On or about August 25, 2010,
Mr. Ho spoke with Ms. Caulfield, about the case.  The substance of
this discussion is disputed.  According to Mr. Ho, Ms. Caulfield
admitted that American Home's policy was primary on the risk and
that State Farm's policy afforded only excess coverage and would
likely not be triggered with respect to the Park action.  Pl.'s Ex.
Q.  Ms. Caulfield denies that she was even aware of the terms of
policies at the time she spoke with Mr. Ho.  Pl.'s Ex. H at 15, 16,
22.  At his deposition, Mr. Ho admitted that Ms. Caulfield never
represented that she was coverage counsel for American Home or that
she was authorized to make coverage decisions on behalf of American
Home.  Pl.'s Ex. I at 31-32.

On August 27, 2010, Mr. Ho sent Ms. Caulfield a letter
confirming his purported understanding of their discussion:

> As discussed in our conversation, we are the insurance
> carrier for your client, David Beatson.  It is our
> understanding that you will be providing primary
> coverage to our insured for this loss.  We further
> understand that your clients have a 1,000,000
> liability policy for bodily injury.
>
> We confirmed that the Ford vehicle driven by Mr.
> Beatson on the date of the loss will qualify as a non-
> owned car under his personal State Farm policy.  As
> such, liability limits of $250/$500,000 for bodily
> injury will apply as excess coverage.
>
> We further understand that a trial in this case has
> been continued to January 24, 2011.  We request to be
> carbon copied on any mediation briefs, settlement
> conference statements, phase reports, etc. so that we
> can keep informed on the developments in this case.

Pl.'s Ex. R.  Mr. Ho's letter was not sent directly to American Home, though Mr. Adams, American Home's claims adjuster, testified that he saw the letter within "a few weeks" of the date it was sent to Ms. Caulfield.  Def.'s Ex. B at 25-26.  Mr. Adams presumes that the letter was sent to him by Ms. Caulfield.  Id.  There is no indication that either Ms. Caulfield or Mr. Adams responded to Mr. Ho's letter or contested his view of State Farm's obligations under its policy.

In the fall of 2010, the parties to the Park action engaged in an unsuccessful mediation.  Def's Ex. C. at 27-28.  A six-figure settlement offer was made during the mediation.  Id. at 28.  Caulfield did not request that State Farm participate in the mediation.  Id. at 28-29.

On January 17, 2011, the parties to the Park action agreed on a settlement.  Pl.'s Ex. D.  Under the settlement, American Home, on behalf of the defendants, agreed to pay Ms. Park $500,000 for her personal injury claim.  Id.  According to Raymond Adams, the complex claims director at American Home's parent company, American Home also paid Ms. Park $18,684.95 to settle her property damage claim.  ECF No. 25 ("Adams Decl.") ¶ 10.  American Home also claims that it incurred $55,296.04 in attorney's fees, Pl.'s MSJ at 6, though the only evidence it has submitted in support of this contention is Mr. Adam's declaration, in which he states that American Home incurred $22,018.47 in legal fees between August 13, 2010 and March 10, 2011, Adams Decl. ¶ 11.  Evidence produced by American Home through discovery shows only $5,264.38 in legal fees. Def.'s Exs. W, X.

1    There is no evidence that State Farm contributed anything to

2   the Park settlement or to Mr. Beatson's defense.  State Farm first

3   reviewed the applicable American Home policy in late January 2011,

4   after the settlement was reached with Ms. Park.  Pl.'s Ex. K.

5   Apparently, State Farm did not review its own policy until early

6   2012.  Initially, State Farm mistakenly based its coverage position

7   on an out dated State Farm policy that expired several months prior

8   to the July 2007 accident.  See Pl.'s Exs. M, N.  Mr. Ho admitted

9   that he first saw the applicable State Farm policy when it was

10   requested by State Farm's counsel through discovery in 2012.  Pl.'s

11   Ex. I at 55-56.

12    In February 21, 2011, State Farm informed American Home that

13   it would not contribute towards the defense and settlement of the

14   Park Action.  Pl.'s Ex. E.  State Farm asserted that it had been

15   led to believe that the American Home policy provided primary

16   coverage in relation to the State Farm policy and that American

17   Home had made no suggestion to the contrary until January 7, 2011.

18   Id.  As a result, State Farm explained, it was not given adequate

19   notice of the settlement or an opportunity to select defense

20   counsel or evaluate Ms. Park's claim.  Id.

21    On November 7, 2011, American Home brought this action against

22   State Farm for equitable indemnity, equitable contribution,

23   equitable subrogation, and declaratory relief.  ECF No. 1

24   ("Compl.").  Now both parties move for summary judgment.

25

26   **III.  LEGAL STANDARD**

27    Summary judgment is proper when "the movant shows that there

28   is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is "material" only if it may affect the outcome of the case, and a dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. "Conclusory statements without factual support are insufficient to defeat a motion for summary judgment." Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

**IV.  DISCUSSION**

  **A.  Liability**

Under California law, one insurer has the right to seek equitable contribution from another when both are obligated to indemnify or defend the same claim, and the first insurer has paid more than its share of the loss or has defended the action without any participation from the other. Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1293 (Cal. App. Ct. 1998). In this case, there is no dispute that both American Home and State Farm issued policies to Mr. Beatson and that both policies operate as primary policies on the loss involved in the Park action. See Def.'s XMSJ at 8; Pl.'s MSJ at 5. It is also undisputed that only American Home provided coverage for Mr. Beatson's claim. Thus, American Home would normally be entitled to equitable contribution from State Farm.

While State Farm acknowledges this general principle, it

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

contends that equitable considerations weigh against finding for American Home. Def.'s XMSJ at 8. As State Farm points out, California courts generally refuse to find a right to equitable contribution against an insurer that is not put on notice of its potential contribution obligations. For example, in <u>Truck Insurance Exchange v. Unigard Insurance Co.</u>, 79 Cal. App 4th 966, 970-72 (Cal. Ct. App. 2000), Truck Insurance sought contribution from Unigard Insurance with respect to an underlying lawsuit that Unigard had never been asked to defend and a settlement that had concluded prior to any tender to Unigard. The court found for Unigard, reasoning: "To deny Unigard control (or shared control) of the defense in the [underlying] cases and then saddle it with expenses about which it knew nothing strikes us as the antithesis of equity." <u>Id.</u> at 981. State Farm argues that the instant action is analogous because American Home failed to put State Farm on notice of its contribution obligations. Def.'s XMSJ at 10-11.

But <u>Truck</u> alone cannot justify denying American Home's contribution and subrogation rights. In <u>Truck</u>, the defendant insurer had absolutely no notice of the underlying action until after a settlement had been reached. 79 Cal. App. 4th at 981-82. In contrast, State Farm was on notice of the Park action as early as August 2010, nearly five months prior to settlement. <u>See</u> Pl.'s Ex. J. At the time, Mr. Beatson informed State Farm that he was being sued by Ms. Park. <u>Id.</u> Accordingly, a reasonable and diligent inquiry would have revealed that State Farm owed Mr. Beatson a duty to defend and indemnify. Under California law, such constructive notice is sufficient to trigger an insurer's right to equitable contribution. <u>See</u> <u>OneBeacon Am. Ins. Co. v. Fireman's</u>

1    <u>Fund Ins. Co.</u>, 175 Cal. App. 4th 183, 200 (Cal. Ct. App. 2009).

2        State Farm argues that any notice was rendered moot by

3    American Home's representations and conduct regarding State Farm's

4    obligations.  Def.'s XMSJ at 8-11.  State Farm contends that

5    American Home continually represented that the American Home policy

6    was the only primary on the loss, and that American Home only

7    changed its position on the eve of the settlement of the Park

8    action.  <u>Id.</u>  Specifically, State Farm points to the following

9    facts: (1) on August 26, 2010, Ms. Caulfield allegedly told Mr. Ho

10   that the American Home policy was the only primary on the loss, (2)

11   Mr. Ho sent Ms. Caulfield a letter on August 27, 2010 confirming

12   his understanding that American Home was the only primary, (3)

13   neither Ms. Caulfied nor American Home responded to or otherwise

14   challenged Mr. Ho's August 27 letter, (4) American never forwarded

15   any reports or documents related to the Park action, other than a

16   pre-trial report and perhaps one other report, and (5) there is no

17   evidence that State Farm was aware that American Home was reserving

18   its right to seek contribution from State Farm.  <u>Id.</u>  Based on

19   these facts, State Farm asserts affirmative defenses of estoppel

20   and laches.  The Court finds that neither affirmative defense

21   applies here.

22       Equitable estoppel requires a showing of four elements: "(1)

23   the party to be estopped must be apprised of the facts; (2) he must

24   intend that his conduct shall be acted upon, or must so act that

25   the party asserting the estoppel had a right to believe it was so

26   intended; (3) the other party must be ignorant of the true state of

27   facts; and (4) he must rely upon the conduct to his injury."

28   <u>Emp'rs. Mut. Cas. Co. v. Phila. Indem. Ins. Co.</u>, 169 Cal. App. 4th

**United States District Court**
For the Northern District of California

1    340, 350 (2008) (internal quotations omitted).  In this case, State

2    Farm did not rely on the actions or statements of American Home.

3    Instead, it relied on the conduct of Ms. Caulfield, Mr. Beatson's

4    defense counsel.  While Ms. Caulfield was appointed by American

5    Home, she did not represent it.  In fact, Mr. Ho admitted that Ms.

6    Caulfield never represented that she was coverage counsel for

7    American Home.  Pl.'s Ex. I at 31-32.  Accordingly, it is entirely

8    unclear why Mr. Ho and State Farm chose to rely on her purported

9    representations rather than speaking directly with American Home.

10   To the extent that Ms. Caulfield did represent American Home, and

11   the undisputed facts show that she did not, she was not apprised of

12   the facts.  Ms. Caulfield has stated that she had not reviewed the

13   provisions of the American Home and State Farm policies prior to

14   speaking with Mr. Ho.[2]

15        Moreover, there is no indication that State Farm was ignorant

16   of the true state of facts, or at least that it did not have the

17   ability to discern them.  Estoppel only applies where the party

18   asserting it is "destitute . . . of all convenient or ready means"

19   of acquiring knowledge of the true state of facts.  City of Long

20   Beach v. Mansell, 3 Cal. 3d 462, 490-91 (Cal. 1970) (quotations

21   omitted).  Here, State Farm had ready access to the policy it

22   issued to Mr. Beatson, but mistakenly pulled the wrong one.  State

23   Farm also could have easily obtained American Home's policy and

24   other relevant documents by reaching out to the insurer directly.

25   Instead, State Farm chose to contact only Ms. Caulfield, who had no

26

27   ────────────────

28   [2] As discussed above, there is a dispute concerning what Ms.
     Caulfield told Mr. Ho on August 25, 2010.  That dispute is not
     material, however, because Ms. Caulfield did not have the actual or
     apparent authority to bind American Home with respect to coverage
     determinations.

1    involvement in American Home's coverage decisions.  Principles of

2    equity counsel against penalizing American Home for State Farm's

3    mistakes and State Farm's failure to contact the appropriate

4    persons regarding its potential contribution obligations.

5        State Farm's affirmative defense of laches fails for similar

6    reasons.  "Laches is an equitable time limitation on a party's

7    right to bring suit, resting on the maxim that equity aids the

8    vigilant, not those who sleep on their rights."  <u>Magic Kitchen LLC</u>

9    <u>v. Good Things Int'l Ltd.</u>, 153 Cal. App. 4th 1144, 1156 (Cal. Ct.

10   App. 2007) (quotations omitted).  To prevail on a laches defense, a

11   defendant must show: (1) that the plaintiff delayed asserting a

12   right or claim, (2) the delay was not reasonable or excusable, and

13   (3) the defendant suffered prejudice as a result of the delay.  <u>Id.</u>

14   at 1157.  The flaw in State Farm's laches defense is that American

15   Home did not need to formally assert its right to contribution to

16   reserve that right.  Under California law, "an insurer's obligation

17   of equitable contribution for defense costs arises where, after

18   notice of litigation, a diligent inquiry by the insurer would

19   reveal the potential exposure to a claim for equitable

20   contribution."  <u>OneBeacon</u>, 175 Cal. App. 4th at 203.  Here, State

21   Farm was on notice of the Park action as early as August 2010,

22   about five months prior to the settlement of the action.  Further,

23   State Farm has failed to show that it suffered prejudice as a

24   result of American Home's purported delay.  As soon as it learned

25   of the action in August 2010, it had the opportunity to investigate

26   the claim and participate in Mr. Beatson's defense.  It chose not

27   to do so.  Any prejudice to State Farm flowed from its own

28   inaction.

**United States District Court**
For the Northern District of California

1    Accordingly, the Court finds that summary judgment is

2  appropriate on the issue of liability and finds for American Home

3  on its claims of equitable indemnity, equitable subrogation,

4  equitable contribution, and declaratory relief.

5    **B.    <u>Damages</u>**

6    Now that the Court has found that American Home is entitled to

7  contribution from State Farm, it must determine what that

8  contribution should be.  In allocating defense and indemnity costs

9  among multiple insurers, a trial court must select the most

10  equitable allocation method.  <u>Scottsdale Ins. Co. v. Century Sur.</u>

11  <u>Co.</u>, 182 Cal. App. 4th 1023, 1032 (Cal. Ct. App. 2010).  In cases

12  such as this, Courts have enunciated various equitable allocation

13  methods, including "apportionment based upon the relative policy

14  limits of each primary policy" (the "policy limits" method); and

15  (2) "apportionment among each carrier in equal shares" (the "equal

16  shares" method).  <u>Id.</u> (internal quotations omitted).  Trial courts

17  have broad discretion in choosing among the various methodologies.

18  <u>Id.</u>

19    State Farm argues for the policy limits method, which would

20  result in State Farm paying only one quarter of the indemnity and

21  defense costs in the underlying settlement.  Def.'s MSJ at 12.

22  American Homes endorses the equal shares method, arguing that the

23  policy limits method is inequitable because it would leave State

24  Farm in the same position as if it had met its contractual

25  obligations and accepted coverage from the beginning.  Pl.'s MSJ at

26  12-13.

27    The Court adopts the policy limits method here.  American Home

28  argues that State Farm engaged in bad faith because it dodged its

**United States District Court**
For the Northern District of California

contractual obligations from the outset.  But the evidence belies this contention.  Though Mr. Beatson informed State Farm of the Park action in August 2010, there is no indication that he ever tendered the action to the insurer.  Further, the first time American Home directly reached out to State Farm about its contribution obligations was January 2011, the eve of the Park action's settlement.  Thus, State Farm could not have engaged in bad faith in handling Mr. Beatson's claim because Mr. Beatson never actually tendered a claim to State Farm.  Under the policy limits method, American Home is entitled to recover 20 percent of the indemnity and defense costs it incurred in connection with the Park action.

The Court also finds that the undisputed evidence shows that American incurred at least $500,000 in the settlement of the Park action.  See Pl.'s Ex. D.  American Home claims that it incurred an additional $18,684.19 in settling Ms. Park's property damage claims, as well as $55,296.04 in legal fees and costs.  However, the settlement agreement produced by American Home makes no mention of the $18,684.19 figure.  Further, State Farm has introduced evidence suggesting that American Home incurred only $5,264.38 in defense costs, raising a triable issue of material fact on this issue.  Accordingly, the Court leaves these two issues for trial.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff American Home Assurance Company's motion for summary judgment and DENIES Defendant State Farm Mutual Automobile Insurance Company's motion for summary judgment.  The Court finds for American Home on its

1   claims for equitable indemnity, equitable subrogation, equitable

2   contribution, and declaratory relief.

3      As to damages, the Court finds that American Home is entitled

4   to equitable contribution from State Farm of $100,000 for

5   settlement of the bodily injury claim in the Park action -- that is

6   20 percent of the $500,000 settlement.  American Home is also

7   entitled to recover from State Farm (1) 20 percent of the amount

8   for which American Home settled Ms. Park's claim for property

9   damage, and (2) 20 percent of the total legal fees that American

10   Home expended in defending the Park action.  However, at this stage

11   there exist triable issues of fact as to these amounts.

12   Accordingly, these two issues may be resolved at trial.

13

14      IT IS SO ORDERED.

15

16   Dated:  April 9, 2013



17                    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28